IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KENNETH SELMAN,

       Plaintiff,

vs.                                    No. CIV 07-1059 JB/WDS

DELTA AIRLINES, d/b/a DAL
GLOBAL SERVICES and DAVID
CLINTON JANKE, individually and
as agent of DELTA AIRLINES, INC.,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant DAL Global Services, LLC's Motion for Judgment on the Pleadings, filed April 7, 2008 (Doc. 17)("Judgment on the Pleadings"). The Court held a hearing on June 2, 2008. The primary issues are: (i) whether the Court should take judicial notice of the documents in Defendant DAL Global Services' bankruptcy proceedings; (ii) whether the Court should consider Plaintiff Kenneth Selman's unsigned and unnotarized affidavit; (iii) whether Selman had adequate notice of the claims bar in the Bankruptcy Court's Confirmation Order in Defendant DAL Global Services' bankruptcy proceedings; (iv) whether DAL Global Services ("DGS") had an obligation to list Selman's claim if it wanted the protection of the Bankruptcy Court's claims bar; (v) whether the willful-and-malicious exception in 11 U.S.C. § 523(a)(6) excepts Selman's claim from the claims bar in the Confirmation Plan; and (vi) whether the Court should address the merits of Selman's individual claims. The Court will take judicial notice of the documents in DGS' bankruptcy proceedings. The Court will not assume as true the statements in Selman's affidavit or any other matters not properly included in the pleadings, but will

treat these statements and matters as additional argument and background facts.  Because the Court concludes that there are material facts in dispute, the Court is unable to decide this case on the pleadings and thus the Court will deny DGS' motion.

**FACTUAL BACKGROUND**

While the Court cannot and should not resolve factual disputes on a motion for judgment on the pleadings, and must accept the allegations of the Complaint as true, the Court notes that DGS disputes most of the factual allegations raised in Selman's Complaint as well as the merits of Selman's claims in this action.  <u>See</u> Amended Answer of Defendant DAL Global Services, LLC, filed March 6, 2008 (Doc. 12)("Amended Answer"); Notice of Filing of State Court Pleadings, filed October 22, 2007 (Doc. 2), Exhibit B, I. Complaint for Damages for Assault  II.  Breach of Contract  III.  Wrongful Discharge    IV. Breach of a Covenant of Good Faith and Fair Dealing, filed September 7, 2007 ("Complaint").  In response, Selman has attempted to establish most of his version of the facts by submitting an affidavit.  <u>See</u> Affidavit of Kenneth Selman (undated), filed May 5, 2007 (Doc. 25).  Again, while the actual facts are not pertinent to this motion, it appears that the parties agree on few facts of this case.

1.      **Relationship Between Delta and DGS.**

In his Complaint, Selman mistakenly refers to DGS as "Delta Airlines d/b/a DAL Global Services."  Complaint at 1.  DGS is a wholly owned subsidiary of Delta Air Lines, Inc. ("Delta").  <u>See</u> Answer at 1, n.1.  At all times pertinent to Selman's claims, DGS employed Selman.  <u>See</u> Answer ¶ 5, at 2.  Delta Air Lines, DGS' parent, never employed Selman.  <u>See id.</u>  This distinction, however, is immaterial, because DGS and Delta were both Debtors in the Chapter 11 Bankruptcy and all of the pre-confirmation date claims for both entities were dismissed pursuant to the

Bankruptcy Court's Confirmation Order.   See Judgment on the Pleadings, Exhibit 1, Order Confirming Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code ("Confirmation Order").

> **2.     DGS' Bankruptcy.**

On September 14, 2005, Delta, the parent corporation of DGS, and its subsidiaries, including DGS, commenced a voluntary case under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). See Judgment on the Pleadings at 2.  It is undisputed that any claims Selman possessed were post-petition claims, because the vast majority of his employment career began and ended while DGS and Delta were Chapter 11 debtors.  See Complaint ¶ 5, at 1 (stating "Plaintiff began working for Defendant Delta on or about the beginning of 2006 as a bag handler."); Amended Answer ¶ 5, at 2 (stating "Plaintiff began working for DGS on or about September 6, 2005.").

On May 19, 2006, Selman suffered a work-related back injury when he was lifting baggage as part of his job.  See Complaint  ¶ 5, at 1; Amended Answer ¶ 5, at 2.  DGS was notified of the injury, and Selman received medical care for the treatment of his work-related injuries. See Complaint ¶ 5, at 1; Amended Answer ¶ 5, at 2.  During the time that he received medical care, he was released to work at light duty, then taken off for one week, and then released again to light duty. See Plaintiff's Response to Motion for Judgment on the Pleadings at 2, filed May 5, 1008 (Doc. 24)("Response").

Selman alleges that his manager or supervisor at the time, David Janke, threatened to fire him because he was missing work, because he was not able to do the full duties of his job, and "because he was not capable of doing his complete unrestricted job duties."  Complaint ¶ 7, at 2.  Selman alleges that, on or about August 1, 2006, Janke intentionally assaulted and threatened to strike

Selman during a meeting, and placed Selman in fear of bodily harm. <u>See</u> <u>id.</u> ¶ 8, at 2.

Subsequent to the alleged assault, Selman called the police department to prepare a police report, and one was prepared.  <u>See</u> Complaint ¶ 8, at 2; Amended Answer ¶ 8, at 2.  Selman alleges that a criminal charge of assault was filed against Janke by the Police Department. <u>See</u>  Complaint ¶ 8, at 2.  It is Selman's understanding that Janke pled guilty to the charge.  <u>See</u> <u>id.</u>

Selman alleges that, on August 13, 2006, he was suspended from work on an allegation that he was late to work. <u>See</u> Response at 2. Selman denies that he was late for work.  <u>See</u> <u>id.</u>  Selman alleges that, during the same week, he was told that he was being fired.  <u>See</u> <u>id.</u>

Selman alleges that he was subsequently fired on a pretext that he was late for work.  <u>See</u> Complaint ¶ 9, at 2.  Selman contends that the firing was also intentional and in reprisal for the criminal charges that he filed against his supervisor.  <u>See</u> Response at 3.

Selman applied for unemployment benefits and received them from the date of his termination until the end of February 2007.  <u>See</u> Reply at 2.  Selman alleges that DGS did not contend that he could not get unemployment benefits because of the bankruptcy proceedings. <u>See</u> <u>id.</u>  Selman also filed for workers' compensation benefits on April 3, 2007.  <u>See</u> <u>id.</u>  An attorney represented DGS in the case; his workers' compensation counsel was Narcisco Garcia -- the same counsel that Selman has for this action.  <u>See</u> <u>id.</u>  Selman went through a mediation process and represents that, during the workmen's compensation mediation, he informed DGS that he would not release his wrongful termination claim. <u>See</u> <u>id.</u>

**3.    Confirmation Order.**

On April 25, 2007, the Bankruptcy Court issued an Order Confirming Debtors' Joint Plan of Reorganization Under Chapter 11 of The Bankruptcy Code.  <u>See</u> Confirmation Order.  As stated

in footnote 2 on page 1 of the Confirmation Order, the term "Debtors" includes Delta, DGS, and all of the other Delta-owned companies. Confirmation Order at 1, n.2.  Under paragraph 78, entitled "Discharge of Claims and Termination of Interests," the Confirmation Order provided for the discharge upon the Effective Date -- April 30, 2007 -- of all Claims based on acts or omissions that occurred before the Effective Date. Confirmation Order at 38.

The Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code ("Reorganization Plan") defines "Claim" to have "the meaning set forth in section 101(5) of the Bankruptcy Code." Judgment on the Pleadings at 4 (quoting Reorganization Plan at Article 1, § 1.1, ¶ 33).  As set forth in the Confirmation Order:

> [T]he rights afforded in the Plan and the payments and distributions to be made hereunder shall discharge all existing debts and Claims, and shall terminate all Interests of any kind, nature or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code . . . .   [U]pon the Effective Date [April 30, 2007], all existing Claims against the Debtors and Interests in the Debtors shall be . . . discharged and terminated.

Judgment on the Pleadings at 3 (quoting Confirmation Order ¶ 78).  Further, in paragraph 80 of the Confirmation Order entitled "Injunction," holders of pre-Effective Date -- pre-April 30, 2007 -- claims are enjoined from commencing or continuing any action or proceeding against the Reorganized Debtors, including DGS, with respect to such claims.   Paragraph 80 of the Confirmation Order states in pertinent part:

> [A]ll persons or entities who have held, hold or may hold Claims or Interests and all other parties in interest . . . are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim . . . or Interest against the Debtors . . . (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, the Reorganized Debtors or property of any Debtors or Reorganized Debtors

Judgment on Pleadings (quoting Confirmation Order ¶ 80).

All of the filings and notices regarding DGS' bankruptcy were made available to the public, including to Selman, through www.deltadocket.com.  <u>See</u> Judgment on Pleadings at 2. The filings and notices included, among many other notices and important pleadings, the notice of the bar date for filing administrative claims. <u>See id.</u> With respect to that Notice, § 8.2 of the Court-approved Plan of Reorganization states: "(a) A notice setting forth the Other Administrative Claim Bar Date will be (i) filed on the Bankruptcy Court's docket and (ii) posted on the Debtors' case information website at www.deltadocket.com.  <u>No other notice of the Other Administrative Claim Bar Date will</u> <u>be provided</u>." Judgment on Pleadings (quoting Debtors' Plan of Reorganization § 8.2)(emphasis in original).  The Other Administrative Claim Bar Date was May 30, 2007.  <u>See</u> Judgment on Pleadings at 3.  The lengthy Debtor's Reorganization Plan is accessible online at http://www.deltadocket.com/delta_downloads_root/NewPlan.pdf.  <u>See</u> Judgment on Pleadings at 3, n.2.  Moreover, the Confirmation Order and all of the other bankruptcy documents, pleadings, and orders are, and have been since its Chapter 11 filing, available to the public online via "www.deltadocket.com."  The lengthy Confirmation Order is accessible via http://www.deltadocket.com/delta_downloads/delta_downloads_root/orderversion2.pdf.  <u>See</u> Judgment on Pleadings at 2, n.4.

It is undisputed that Selman failed to file an administrative claim by the Administrative Claim Bar Date of May 30, 2007. <u>See</u> Complaint.  Selman states that Delta did not notify him that it filed for bankruptcy. <u>See</u> Response at 3.  Selman states that, before DGS filed this motion, he was not informed or notified that it had filed bankruptcy proceedings.  <u>See id.</u>  The Court notes, however, that as § 345 of the Bankruptcy Code requires, Selman's weekly pay checks from DGS were

stamped "Debtor-in-Possession." Reply at 2.

Selman's workers' compensation case was settled, and Selman notes that the Release preserved his wrongful termination claim.  See Response at 2-3.  The statement -- "[t]his Release does not release Selman's Wrongful Termination claim" --  was handwritten on the Release. Response, Exhibit 2 at 4, Release. The Release and accompanying statement was signed on July 30, 2007.  See id. Selman contends that DGS knew of the claim in this case before its discharge in bankruptcy and thus that DGS was aware of Selman's claim before its plan in bankruptcy was confirmed.  See id. at 3.

## PROCEDURAL BACKGROUND

While there is a factual dispute when DGS knew about Selman's wrongful termination claims, there is no dispute that they arose before the Bankruptcy Court's Confirmation Order was issued.  Moreover, there is no dispute that the Confirmation Order cuts off all claims that arose before the effective date of the Confirmation Order.  The only issue is whether the Selman had adequate notice that the Confirmation Order would cut off his claims.

1.      **Selman's Claims.**

On September 7, 2007, Selman filed his Complaint for Damages for Assault, Breach of Contract, Wrongful Discharge and Breach of a Covenant of Good Faith and Fair Dealing.  See Complaint.  In his Complaint, Selman asserts four claims, all of which allegedly arose out of his termination: (i) claim for damages for assault; (ii) breach of contract; (iii) wrongful discharge; and (iv) breach of covenant of good faith and fair dealing.  See Complaint at 1-4.  His Complaint reflects that all of his causes of action against DGS allegedly arose between the time of his assault on August 1, 2006 and the August 2006 termination of his DGS employment.  See id. ¶¶ 8-10, at 2.

2.      **DGS' Motion.**

DGS moves the Court, pursuant to rule 12(c) of the Federal Rules of Civil Procedure, for entry of a judgment in its favor and against Selman. <u>See</u> Judgment on Pleadings at 8. On May 5, 2008, Selman filed his Response to Motion for Judgment on the Pleadings, <u>see</u> Response, and an affidavit, <u>see</u> Affidavit of Kenneth Selman.  Selman did not sign the affidavit or have it notarized. <u>See id.</u> at 2.  Selman argues that the Court should deny DGS' motion. <u>See</u> Response at 3-4.  On May 19, 2008, DGS filed its Reply Brief in Support of DAL Global Services, LLC's Motion for Judgment on the Pleadings.  <u>See</u> Reply.  On May 19, 2008, DGS filed a Notice of Completion of Briefing Regarding Defendant's Motion for Judgment on the Pleadings.  <u>See</u>  Notice of Briefing Complete, filed May 19, 2008 (Doc. 27).

The Court held a hearing on June 2, 2008.  At the hearing, DGS stated that it did not know that Selman was asserting a wrongful termination claim until July 30, 2006, when Selman signed the workers' compensation release.  <u>See</u> Transcript of Hearing at 5:21-23 (taken June 2, 2008)("Tr.")(Stephenson).[1]  DGS noted that July 30, 2007 was two months after the second filing deadline of May 30, 2007 and three months after the entry of confirmation order under which all claims were discharged.  <u>See id.</u> at 5:23-6:1 (Stephenson). At the hearing, Selman stated that "the evidence will bear out that Delta was in fact notified in October of 2006 of [Selman's] claim." <u>Id.</u> at 11:14-15 (Garcia).  When asked, by the Court, what evidence he has at the present time to support that Delta knew of Selman's claim in 2006, Selman stated:

> I've looked for the underlying or background correspondence and I haven't been able
> to locate it yet but I do have a cover I do have a copy of my fax cover to a phone

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

[number] 404[-]773[-]3127 where he had requested the August 4th, 2006 incident report and the criminal complaint and my office faxed them to him on that date. Like I said I [cannot] locate the proceeding correspondence before that date. It's my belief that this fax was based upon our earlier correspondence to Delta notifying them of the claim but I . . . can't put my hands on that correspondence on . . . this date, Your Honor.

Tr. 13:9-18 (Garcia).

Additionally, at the hearing, Selman conceded that the willful or malicious injury exception under § 523(a)(6), which he argued in his Response, did not apply. See Tr. at 14:4-7 (Court & Garcia). Furthermore, Selman agreed with the Court that the key issue for the Court to decide is the notice issue. See Id. at 14:8-10 (Court & Garcia).

After the hearing, on June 5, 2008, DGS filed a Notice of Withdrawal of Motion for Judgment on the Pleadings, giving notice that its Motion for Judgment on the Pleadings is withdrawn. See Notice of Withdrawal of Motion for Judgment on the Pleadings, filed June 5, 2008 (Doc. 28). The Notice of Withdrawal stated: "DGS withdraws its Motion for Judgment on the Pleadings as being premature." Id. at 1.

When the Court received DGS' Notice of Withdrawal, it instructed its Courtroom Deputy Clerk to call DGS' counsel, tell it to review D.N.M.LR-Civ. 7.9, and to comply with it. D.N.M.LR-Civ. 7.9 states: "**Withdrawal of Documents**. A party may withdraw a document from consideration by the Court by filing and serving a notice of withdrawal which specifically identifies the document being withdrawn. Withdrawal requires consent of all other parties or approval of the Court." D.N.M.LR-Civ. 7.9 (bolded in original). DGS' counsel told the Court's Courtroom Deputy that her client did not want a ruling and that she would file something showing that everyone concurs or consents to withdrawal.

On June 23, 2008, Narcisco Garcia, Jr., Selman's attorney, wrote DGS' counsel, Barbara

-9-

Stephenson, stating: "We do not concur with the withdrawal of your motion. We contend the court should deny it." Letter to District Judge James O. Browning from Barbara Stephenson (dated July 2, 2008)(Doc. 31), Exhibit, Letter from Narcisco Garcia, Jr. to Barbara G. Stephenson (dated June 23, 2008). On July 2, 2008, Ms. Stephenson sent the Court a letter stating:

> This letter is to advise the Court of the status of the Motion for Judgment on the Pleadings filed by Defendant DAL Global Services, LLC ("DGS") on April 7, 2008 [Doc. 17]. A hearing on DGS' Motion was held on June 2, 2008; however, the Court did not issue a ruling but gave the parties the opportunity to submit additional briefing if they so desired. In lieu of a supplemental brief, DGS filed a Notice of Withdrawal of Motion for Judgment on the Pleadings on June 5, 2008 [Doc. 28]. Subsequently, your Courtroom Deputy asked that we obtain Plaintiff's counsel's consent to withdraw DGS' Motion for Judgment on the Pleadings. As indicated by the enclosed letter from Plaintiff's counsel, Narcisco Garcia, Plaintiff does not consent to the withdrawal of DGS' Motion.

> The reason for DGS' seeking to withdraw the Motion is that DGS did not anticipate that Plaintiff would contend that he did not have knowledge of the Delta/DGS bankruptcy, nor did DGS believe it would be considered an acceptable excuse coming from an individual who had been employed by the debtors from September 2005 to August 2006. Despite its firm belief that, under the express terms of the Confirmation Order and Plan of Reorganization, Plaintiff's claims were discharged in the bankruptcy proceeding and that Plaintiff is permanently enjoined from attempting to recover on his pre-confirmation date claims, DGS decided it would take Plaintiff's deposition and then move for summary judgment. In doing so, DGS believes that it can establish that Plaintiff's employment claims should be dismissed as a matter of law, as Plaintiff was indisputably employed at-will, and that DGS also can establish that Plaintiff was not a known creditor and was afforded sufficient due process to bind him under the terms of the Plan of Reorganization.

> Now that Mr. Garcia refuses to consent to DGS' Notice of Withdrawal, DGS presumes the Court will render a ruling on its Motion. Accordingly, this letter shall serve as supplemental information in support of DGS' Motion. To begin with, DGS maintains that Plaintiff, as an unknown creditor, was afforded "due process" through published notices and in accordance with the Court-approved Plan of Reorganization. In response to DGS' Motion, Plaintiff attached a July 30, 2007 Release which included a numbered paragraph stating that, "[T]his Release does not release Selman's wrongful termination claim." . . . . This document supports DGS' position that Plaintiff was not a known creditor, as the Release was executed several months after the Effective Date of April 30, 2007. At the hearing, Mr. Garcia speculated that he may have faxed "something" to DGS prior to the date of the

Release.  To date, however, he has submitted no evidence to establish that Plaintiff was a known creditor prior to the Effective Date.  Accordingly, Delta/DGS "was not required to give actual notice to creditors with merely conceivable, conjectural or speculative claims."  . . . .  Providing notice by publication to unknown creditors, as Delta/DGS provided in its bankruptcy proceeding, is sufficient to satisfy due process.  See Bosinger v. U.S. Airways, Inc., 510 F.3d 442, 451 (4th Cir. 2007); Trump Taj Mahal Associates v. Alibraham, 156 B.R. 928, 939-40 (Bankr. D.N.J. 1993). Indeed, the U.S. Supreme Court "has held that publication notice for creditors who are not reasonably ascertainable satisfies due process concerns."  Brooks Fashion Stores, 124 B.R. at 445, citing Tulsa Professional Collection Services, Inc. v. Pope, 485 U.S. 478, 490, 108 S.Ct. 1340, 1347, 99 L.Ed2d 565 (1988).

In addition to maintaining that Plaintiff's claims arose pre-confirmation date and have been discharged, DGS also argued that Plaintiff is permanently enjoined from pursuing his reconfirmation date claims against Delta/DGS . . . as he indisputably failed to protect any interest he had in those claims by timely filing an Administrative Claims by the May 30, 2007 Other Administrative Claim Bar Date. Accordingly, Plaintiff should not be able to proceed with those claims in this Court. Plaintiff instead, should be required to obtain leave to file a late Administrative Claim from Judge Adlai Hardin, Jr., the presiding United States Bankruptcy Judge over the Debtors' Bankruptcy in the Southern District of New York.

> \* \* \* \*

Based on the foregoing and in addition to the arguments and the many cases in support of DGS' position that Plaintiff's pre-confirmation date employment claims should be dismissed under Rule 12(c), DGS requests that the Court grant its Motion for Judgment on the Pleadings.

Letter from Barbara G. Stephenson to the Court at 1-3 (dated July 2, 2008)(Doc. 31).

## STANDARDS FOR DISMISSAL UNDER RULE 12(c)

"After the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  Rule 7 makes a distinction between pleadings and motions:

(a) **Pleadings.** only these pleadings are allowed:

(1) a complaint;

(2) an answer to a complaint;

-11-

(**3**) an answer to a counterclaim designated as a counterclaim;

(**4**) an answer to a crossclaim;

(**5**) a third-party complaint;

(**6**) an answer to a third-party complaint; and

(**7**) if the court orders one, a reply to an answer.

Fed. R. Civ. P . 7(a)(bolded in original). Section b of rule 7 distinguishes a motion from a pleading stating: "A request for a court order must be made by motion." Fed. R. Civ. P. 7(b).

A rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties. See Kruzitis v. Okuma Mach. Tool, Inc., 40 F.3d 52, 54 (3d Cir. 1994)("Under Rule 12(c), we will not grant judgment on the pleadings unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.")(internal quotation marks omitted).   A "[j]udgment on the pleadings should not be granted 'unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" Park Univ. Enterprises, Inc. v. Am. Cas. Co. of Reading, Pa., 442 F.3d 1239, 1244 (10th Cir. 2006)(citing United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000)).

"Any party may move for judgment on the pleadings if no material facts are in dispute and the dispute can be resolved on both the pleadings and any facts of which the Court can take judicial notice." Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. 303, 304 (D.N.M. 2000)(citing Fed. R. Civ. P. 12(c)). A motion pursuant to rule 12(c) is generally treated in the same manner as a motion to dismiss under rule 12(b)(6). See Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. at 304 (citing Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir.1998)).  A motion for a judgment on the

-12-

pleadings will be granted if the pleadings demonstrate that the moving party is entitled to judgment as a matter of law. See Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. at 304.

A court considering a motion for judgment on the pleadings should "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same." Park Univ. Enterprises, Inc. v. Am. Cas. Co. of Reading, Pa., 442 F.3d at 1244. The court must view the facts presented in the pleadings, and draw the inferences therefrom, in the light most favorable to the nonmoving party. See Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. at 304. All of the nonmoving parties' allegations are deemed to be true, and all of the movants' contrary assertions are taken to be false. See Nat'l Metro. Bank v. United States, 323 U.S. 454, 456-57 (1945); Ramirez v. Dep't of Corr., 222 F.3d 1238, 1240 (10th Cir. 2000); Freeman v. Dep't of Corr., 949 F.2d 360, 361 (10th Cir. 1991).

In this fashion, the courts hope to ensure that the nonmoving party's procedural and substantive rights are decided as fully and fairly on a rule 12(c) motion as they would have been if there had been a trial on the merits. See C. Wright & A. Miller, Federal Practice and Procedure: Civil 3d § 1368 (Judgment on the Pleadings)(citing Roemhild v. Jones, 239 F.2d 492 (8th Cir. 1957)). A district court may grant a motion for judgment on the pleadings only if all material issues can be resolved on the pleadings. See Hill v. Cray Research, Inc., 864 F.Supp. 1070, 1078 (D.N.M. 1991).

The same standards that govern a motion to dismiss under rule 12(b)(6) also govern a motion for judgment on the pleadings under rule 12(c). See Atl. Richfield Co. v. Farm Credit Bank, 226 F.3d 1138, 1160 (10th Cir. 2000). Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule

-13-

12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citation omitted). "[T]he Supreme Court recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1967, 1969). "The [Supreme] Court [of the United States] explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1974)(alterations omitted). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a

reasonable likelihood of mustering factual support for these claims."  Ridge at Red Hawk, L.L.C.

v. Schneider, 493 F.3d at 1177.   The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a
> complaint: if they are so general that they encompass a wide swath of conduct, much
> of it innocent, then the plaintiffs "have not nudged their claims across the line from
> conceivable to plausible."  The allegations must be enough that, if assumed to be
> true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly,

127 S Ct. at 1974)(internal citations omitted).

> This requirement of plausibility serves not only to weed out claims that do not (in the
> absence of additional allegations) have a reasonable prospect of success, but also to
> inform the defendants of the actual grounds of the claim against them.  "Without
> some factual allegation in the complaint, it is hard to see how a claimant could
> satisfy the requirement of providing not only 'fair notice' of the nature of the claim,
> but also 'grounds' on which the claim rests."  [Bell Atl. Corp. v. Twombly, 127
> S.Ct.] at 1965 n. 3.  See Airborne Beepers & Video, Inc. v. AT & T Mobility L.L.C.,
> 499 F.3d 663, 667 (7th Cir. 2007) ("[A]t some point the factual detail in a complaint
> may be so sketchy that the complaint does not provide the type of notice of the claim
> to which the defendant is entitled under Rule 8.").  The Twombly Court was
> particularly critical of complaints that "mentioned no specific time, place, or person
> involved in the alleged conspiracies." 127 S. Ct. at 1971 n. 10. Given such a
> complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations . .
> . would have little idea where to begin."  Id.

Robbins v. Oklahoma, 519 F.3d at 1248.

In determining the sufficiency of a complaint, all well-pleaded factual allegations are to be

taken as true. See Timpanogos Tribe v. Conway, 286 F.3d 1195, 1204 (l0th Cir. 2002).

"Nevertheless, conclusory allegations without supporting factual averments are insufficient to state

a claim upon which relief can be based." Hall v. Belman, 935 F.2d 1106, 1110 (l0th Cir. 1991).

"Moreover, in analyzing the sufficiency of the plaintiff's complaint, the court need accept as true

only the plaintiff's well-pleaded factual contentions, not his conclusory allegations." Id. Only well-

pleaded facts, as distinguished from conclusory allegations, are admitted when considering a motion

to dismiss for failure to state a claim upon which relief can be granted. See Smith v. Plati, 258 F.3d 1167, 1174 (10th Cir. 2001).

A court must convert a motion to dismiss into a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court" and "all parties . . . [are] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(d). Facts subject to judicial notice may be considered without converting a motion to dismiss into a motion for summary judgment. See Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276, 1279, n.1 (10th Cir. 2004)(citing 27A Fed. Proc., L.Ed. § 62:520 (2003)). Furthermore, when considering a motion to dismiss, "the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000) abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001). A court may consider documents to which the complaint refers if the documents are central to the plaintiff's claim and the parties do not dispute authenticity. See Jacobsen v. Deseret Book Co., 287 F.3d 936, 941-42 (10th Cir. 2002). If, however, a document is not incorporated by reference or attached to the complaint, but is referred to in the complaint and is central to the plaintiff's claim, the defendant may submit an "indisputably authentic copy to the court to be considered on a motion to dismiss." GFF Corp. v. Assoc. Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997). See 5(A) C. Wright & A. Miller, Federal Practice & Procedure § 1327 (3d ed. 2004)("[W]hen the plaintiff fails to introduce a pertinent document as part of her pleading . . . the defendant may introduce the document as an exhibit to a motion attacking the sufficiency of the pleading.").

Federal courts have held that the court can consider related bankruptcy proceedings in a

ruling on a rule 12(c) motion. See United States v. Wood, 925 F.2d 1580, 1582 (7th Cir. 1991).  In

United States v. Wood, the United States Court of Appeals for the Seventh Circuit affirmed the

district court's finding that a court may take judicial notice of past bankruptcy proceedings in the

context of a rule 12(c) motion when the defendant referred to the bankruptcy court proceedings in

its affirmative defenses, and premised its rule 12(c) motion on those same proceedings.  See 925

F.2d at 1582. Ultimately the Seventh Circuit stated that, under such circumstances, "the district court

judge did not err in treating the bankruptcy decision as having been incorporated by reference." Id.

## BANKRUPTCY LAW REGARDING CLAIMS

Much of the law necessary to decide this case is not in dispute.  The only disputed legal

issue is how notice works in the bankruptcy context.  And even on that issue, there is no dispute that

the debtor must be given some notice.

### 1.      Section 101(5).

Section 101(5) of the Bankruptcy Code defines the term claim.

**(5)** The term "claim" means--

**(A)** right to payment, whether or not such right is reduced to judgment, liquidated,
unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal,
equitable, secured, or unsecured; or

**(B)** right to an equitable remedy for breach of performance if such breach gives rise
to a right to payment, whether or not such right to an equitable remedy is reduced to
judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or
unsecured.

11 U.S.C. § 101(5)(bolded in original).  Section 102(2) of the Bankruptcy Code clarifies that a

"'claim against the debtor' includes claim against property of the debtor." 11 U.S.C. § 102(2).

### 2.      The Need to Schedule Claims.

11 U.S.C. § 521(1) states in relevant part:

(a) The debtor shall--

    (1) file --

        (A) a list of creditors; and

        (B) unless the court orders otherwise--

            (i) a schedule of assets and liabilities;

            (ii) a schedule of current income and current expenditures;

            (iii) a statement of the debtor's financial affairs . . .

11 U.S.C. § 521(1).  "Under § 523(a)(3)(A), a claim will not be discharged if it was neither listed nor scheduled and the creditor did not have notice or actual knowledge of the case so that the creditor could timely file a claim." In Re Parker, 313 F.3d 1267, 1269 (10th Cir. 2002).

    **3.**    **Discharge.**

The confirmation of a plan under Chapter 11 discharges the debtor from any debts that arose before the date of such confirmation.  Section 1141(d)(1)(A) and (B) of the Bankruptcy Code provides:

Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan--

(A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not--

(i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;

(ii) such claim is allowed under section 502 of this title; or

(iii) the holder of such claim has accepted the plan; and

(B) terminates all rights and interests of equity security holders and general partners provided for by the plan.

11 U.S.C. § 1141(d)(1)(A) & (B). Further, under § 1141(a), the provisions of a confirmed plan bind

a debtor and its creditors.  See 11 U.S.C. § 1141(a).  11 U.S.C. § 1141(a) states:

> Except as provided in subsections (d)(2) and (d)(3)[2] of this section, the provisions
> of a confirmed plan bind the debtor, any entity issuing securities under the plan, any
> entity acquiring property under the plan, and any creditor, equity security holder, or
> general partner in the debtor, whether or not the claim or interest of such creditor,
> equity security holder, or general partner is impaired under the plan and whether or
> not such creditor, equity security holder, or general partner has accepted the plan.

11 U.S.C. § 1141(a).

Federal courts throughout the country, in post-confirmation employment cases, have

considered whether claims arising before the confirmation of a bankruptcy plan survive the

discharge.   In those cases, many courts, including the Tenth Circuit, have held that the pre-

confirmation date claims are discharged.  See, e.g., Jaurdon v. Cricket Communications, Inc., 412

F.3d 1156, 1158 (10th Cir. 2005)(finding that the confirmation of a plan in a Chapter 11 bankruptcy

discharged the employer from pre-petition claim by the employee because the employee received

---

[2] 11 U.S.C. §§ 1141 (d)(2) and (d)(3) are inapplicable in this case. 11 U.S.C. §§ 1141 (d)(2)
and (d)(3) provide:

> (2) A discharge under this chapter does not discharge a debtor who is an individual
> from any debt excepted from discharge under section 523 of this title.

> (3) The confirmation of a plan does not discharge a debtor if--

> (A) the plan provides for the liquidation of all or substantially all of the property of
> the estate;

> (B) the debtor does not engage in business after consummation of the plan; and

> (C) the debtor would be denied a discharge under section 727(a) of this title if the
> case were a case under chapter 7 of this title.

11 U.S.C. §§ 1141(d)(2)-(3).

formal notice of the bankruptcy); O'Laughlin v. County of Orange, 229 F.3d 871, 874 (9th Cir. 2000)(finding that the employer's pre-discharge violations of the ADA were properly dismissed pursuant to a 12(b)(6) motion, because they were discharged in the defendant's bankruptcy proceedings); McSheery v. Trans World Airlines, Inc., 81 F.3d 739, 740-41 (8th Cir. 1996)(holding that the plaintiff's employment claims arose on date of termination, which occurred before confirmation of defendant's plan and were discharged in the defendant's bankruptcy); Carter v. Safety-Kleen Corp., No. 06 CV 12947, 2007 WL 1180581 at * 3 (S.D.N.Y. March 14, 2007)(same); Cross v. T.B. Toys, 2006 WL 2437831 at **2-4 (N.D. Ill. 2006)(same); Kresmery v. Service America Corp., 227 B.R. 10, 14 (D. Conn. 1998)(finding that under the plain language of Section 1141(d) of the bankruptcy code and the confirmed plan, the defendant's liability for employment discrimination against plaintiff based on its pre-confirmation had been discharged). "The burden of proof of establishing the nondischargeability of a claim lies with the creditor. In the absence of an objection to discharge, the order of discharge is binding on the creditor, unless one of the exceptions in 11 U.S.C. § 523(a)(3) applies." Thomas v. Turner, 54 F.3d 788, 788 (10th Cir. 1995)(internal citations omitted).

    **4.**       **11 U.S.C. § 523(a)(6) Exception.**

Section 523(a)(6) does not permit the discharge of a debt for willful or malicious injury by the debtor to another entity or to the property of another entity. See 11 U.S.C. § 523(a)(6). Code § 523(a)(6) provides: "A discharge under section . . . 1141 . . . of this title does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6)(emphasis added). 11 U.S.C. § 1141(d)(2) provides: "A discharge under this chapter does not discharge a debtor who is an individual from any

debt excepted from discharge under section 523 of this title." 11 U.S.C. § 1141(d)(2). "Maliciousness may be established by showing 'the debtor had knowledge of the creditor's rights and that, with that knowledge, proceeded to take action in violation of those rights.'" Gulf Ins. Group v. Wagner, 37 F.3d 1509, 1511 (10th Cir. 1994)(quoting In re Pasek, 983 F.2d 1524, 1527 (10th Cir. 1993))(internal quotation marks omitted).

The Supreme Court has stated: "[I]t should be generally assumed that Congress expresses its purposes through the ordinary meaning of the words it uses, . . . [and] absent a clearly expressed legislative intention to the contrary, statutory language must ordinarily be regarded as conclusive." Escondido Mutual Water Co. v. La Jolla Band of Mission Indians, 466 U.S. 765, 772 (1983)(citation and internal quotations omitted). 11 U.S.C. § 109(a) authorizes a "person" to be a debtor in bankruptcy, and 11 U.S.C. § 101(41) defines a "person" to include an " individual, partnership, and corporation." 11 U.S.C. § 109(a); 11 U.S.C. § 101(41).  "Although 'individual' is not specifically defined under the code, it is apparent from the separate enumeration of individual and corporation in § 101(41) that those entities were intended to be treated separately under the code." In re Automatic Plating of Bridgeport, Inc., 202  B.R. 540, 542 (Bkrtcy.D.Conn.1996)(citing Yamaha Motor Corp. v. Shadco, Inc., 762 F.2d 668, 670 (8th Cir.1985)("Congress clearly did not intend the term corporate debtor to be used interchangeably with the term individual debtor, as such a construction would render meaningless employment by Congress of the term individual")(internal citations and quotations omitted)). See, e.g., In re Pelkowski, 990 F.2d 737, 742 (3d Cir. 1993)("We believe it is evident that 'individual' debtor is used in contradistinction to "corporate" debtor. "); Garrie v. James L. Gray, Inc., 912 F.2d 808, 812 (5th Cir. 1990)("[T]he 'willful and malicious injury' exception to discharge, like all of the exceptions to discharge found in section 523(a), applies

only to individual, not corporate, debtors."). Cf. In re Chateaugay Corp., 920 F.2d 183, 185 (2d Cir.1990)("[T]he plain meaning of 'individual' in § 362(h) and basic rules of statutory construction would appear to prevent application of the section to benefit corporate debtors").[3] "Further, in [11 U.S.C.] §§ 523(a) and 1141(d)(2), the word 'individual' is used to modify 'debtor.' That modification 'clearly evidences the intent of Congress to exclude corporate debtors from the operation of section 523.'" In re Automatic Plating of Bridgeport, Inc., 202 B.R. at 542 (quoting In re Kuempel Co., 14 B.R. 324, 325 (Bankr.S.D.Ohio 1981)). Additionally, "the bankruptcy Code must be construed liberally in favor of the debtor and strictly against the creditor." In re Warren, 512 F.3d 1241, 1248 (10th Cir. 2008).

The Court notes that both parties conceded that the 11 U.S.C. § 523(a)(6) exception does not apply to corporate debtors. See Reply at 6; Tr. at 14:4-7 (Court & Garcia).

### 5.    The Need for Notice to Creditors.

A fundamental right guaranteed by the Constitution is the opportunity to be heard when a property interest is at stake. Specifically, the [bankruptcy] reorganization process depends upon all creditors and interested parties being properly notified of all vital steps in the proceeding so they may have the opportunity to protect their interests.

Reliable Elec. Co., Inc. v. Olson Const. Co., 726 F.2d 620, 623 (10th Cir. 1984). Generally, due

---

[3] On the other hand, one bankruptcy court has construed the term individual as used in 11 U.S.C. § 362(h) as including corporate debtors and stated

it seems unlikely that Congress meant to give a remedy only to individual debtors against those who willfully violate the automatic stay provisions of the Code as opposed to debtors which are corporations or other like entities. Such a narrow construction of the term would defeat much of the purpose of the section, and we construe the word "individual" to include a corporate debtor.

In re APF Co., 264 B.R. 344, 359 (Bkrtcy.D.Del. 2001).

process requires:

> notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.

In re Barton Indus., Inc., 104 F.3d 1241, 1245 (10th Cir. 1997)(quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)(internal citations omitted)). These due-process requirements apply equally to bankruptcy proceedings.  See  In re Barton Indus., Inc., 104 F.3d at 1245 (citing Bank of Marin v. England, 385 U.S. 99, 102 (1966)). The Tenth Circuit has stated:

> As specifically applied to bankruptcy reorganization proceedings, the Court has held that a creditor, who has general knowledge of a debtor's reorganization proceeding, has no duty to inquire about further court action. The creditor has a "right to assume" that he will receive all of the notices required by statute before his claim is forever barred.

Reliable Elec. Co., Inc. v. Olson Const. Co., 726 F.2d at 622 (quoting New York v. New York, New Haven & Hartford R.R. Co., 344 U.S. 293, 297 (1953))  "[A] creditor's claim is not subject to a confirmed bankruptcy plan when the creditor is denied due process because of inadequate notice." In re Barton Industries, Inc., 104 F.3d at 1245 (citing Reliable Elec. Co., Inc. v. Olson Const. Co., 726 F.2d 620, 622-23 (10th Cir. 1984)).  "[A] Chapter 11 debtor bears the burden of providing formal notice of the confirmation hearing to a known creditor before that creditor's claim may be discharged in bankruptcy." In re Unioil, 948 F.2d 678, 683 (10th Cir. 1991)(emphasis added). "The confirmation of a Chapter 11 plan of reorganization cannot discharge the claim of a creditor who has not received constitutionally adequate formal 'notice of the proceeding or of the confirmation hearing." In re Unioil, 948 F.2d at 683 (quoting Reliable Elec. Co., Inc. v. Olson Constr. Co., 726 F.2d at 623).

-23-

In Reliable Electric Co., Inc. v. Olson Construction Co., Reliable Electric Company ("Reliable"), the debtor, appealed from a final order of the federal district court affirming a decision of the United States Bankruptcy Court that the prepetition, unsecured claim of Olson Construction Company ("Olson"), the creditor, was not subject to Reliable's confirmed Plan of Reorganization. See 726 F.2d at 620. The bankruptcy court found that, although Olson possessed actual knowledge of the reorganization proceeding in general, it did not receive adequate notice of the confirmation hearing. See id. Thus, the bankruptcy court found that Olson's claim was not discharged pursuant to the plan. See id. at 621. On January 30, 1980, Reliable filed a petition for voluntary Chapter 11 reorganization. See id. Reliable filed a schedule of creditors but listed Olson only under "Accounts Receivable" and not as a "Creditor." Id. Sometime between January and November of 1980, Reliable's attorney called Olson's attorney and informed him that Reliable had instituted Chapter 11 proceedings. See id. Olson did not receive any further information from Reliable concerning the Bankruptcy proceedings. See id. On January 13, 1981, the bankruptcy court mailed a notice to the scheduled creditors informing them of the time for filing acceptances or rejections of the plan, of the confirmation hearing and of the time for filing objections to confirmation. See id. On March 12, 1981, the court mailed to the scheduled creditors notice of the confirmation order and discharge of Reliable. See id. Because Olson was not a scheduled creditor, he did not receive any of these notices. See id. On August 10, 1981, the bankruptcy court entered judgment dismissing Reliable's complaint and granting Olson recovery against Reliable. See id. Reliable then filed a claim in the Chapter 11 proceeding on behalf of Olson requesting that the court specifically find that the judgment for Olson be determined a prepetition debt subject to discharge. See id. On appeal the Tenth Circuit considered whether Reliable's failure to give Olson reasonable notice of the

-24-

bankruptcy confirmation hearing constituted a denial of due process, causing Olson's claim not to be subject to the Plan, and thus, not dischargable.  See id. at 622.  The Tenth Circuit found that, after Olson filed a counterclaim against Reliable in December of 1980, Reliable was put on notice of Olson's status as a potential creditor.  See id.  Additionally, the Tenth Circuit stated that the apparent notice given to Olson before the counterclaim filing was inadequate notice of the confirmation hearing.  See id.  Specifically, the Tenth Circuit stated: "[A] creditor . . . who has general knowledge of a debtor's reorganization proceeding has no duty to inquire about further court action.  The creditor has a right to assume that he will receive all of the notices required by statute before his claim is forever barred."  Id. at 622.  The Tenth Circuit found that "Olson acted reasonably when it expected the same formal notice of the confirmation hearing which was sent to other identifiable creditors."  Id. at 622.  The Tenth Circuit ultimately stated that, "notwithstanding the language of section 1141, the discharge of a claim without reasonable notice of a confirmation hearing is violative of  the fifth amendment to the United States Constitution" and thus Olson's claim was not discharged.  Reliable Elec. Co., Inc. v. Olson Constr. Co., 726 F.2d at 623.

The Tenth Circuit addressed a similar issue in In re Unioil, in which the Tenth Circuit found that a prepetition claim should not be discharged, regardless of the fact that the creditor had actual knowledge of the debtor's bankruptcy, because the creditor was not given formal notice of the bar date or confirmation hearing.  See 948 F.2d at 683.  The Tenth Circuit relied on Reliable Electric Company, Inc. v. Olson Construction Company, which held that the discharging of a creditor's claim in a Chapter 11 bankruptcy under 11 U.S.C. § 1141(d) without reasonable notice and an opportunity to be heard violated the creditor's Fifth Amendment due-process rights.  See In re Unioil, 948 F.2d at 683 (citing Reliable Elec. Co., Inc. v. Olson Constr. Co., 726 F.2d at 622).  The Tenth Circuit

further noted that a chapter 11 debtor bears the burden of providing formal notice of the confirmation hearing to a known creditor before that creditor's claim may be discharged in bankruptcy. See In re Unioil, 948 F.2d at 683 (citing Reliable Elec. Co., Inc. v. Olson Constr. Co., 726 F.2d at 623).  The Tenth Circuit held that, even though the creditor was on inquiry notice and had general knowledge of Unioil's reorganization, the creditor had the right to assume that he would receive all the notices required by statute before its claim is discharged.  See In re Unioil, 948 F.2d at 684.

In Mullane v. Central Hanover Bank & Trust Co., the Supreme Court held that a judicial proceeding affecting property interests, to be consistent with due process, must afford any interested party "notice reasonably calculated, under all the circumstances, to apprise [the party] of the pendency of the action and afford [him] an opportunity to present [his] objections." 339 U.S. at 314. "Since a Chapter 11 bankruptcy affects creditors' property interests, these creditors must receive notice consistent with Mullane for the outcome of a bankruptcy reorganization, including the discharge of pre-existing debts, to be binding on them." Bosinger v. United States Airways, Inc., 510 F.3d 442, 451 (4th Cir. 2007)(citing In re R.H. Macy & Co., 161 B.R. 355, 359 (Bankr.S.D.N.Y. 1993)). Courts have interpreted the Mullane v. Central Hanover Bank & Trust Co. standard flexibly in the bankruptcy context, measuring the adequacy of notice against the certainty of a creditor's claims. See Bosinger v. United States Airways, Inc., 510 F.3d at 451 (citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. at 315)("The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.").

As characterized by the Supreme Court, a "known" creditor is one whose identity is either known or "reasonably ascertainable by the debtor." Tulsa Professional Collection Serv., Inc. v. Pope,

485 U.S. 478, 490 (1988). An "unknown" creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. at 317. If a creditor possesses either a "conjectural or future" interest that "do[es] not in due course of business come to [the] knowledge" of the debtor, Mullane v. Central Hanover Bank & Trust Co., 339 U.S. at 317, courts have held that notice by publication is sufficient, see Chemetron Corp. v. Jones, 72 F.3d 341, 346 (3d Cir. 1995). "Conversely, if the name[ ], interest[ ], and address[ ] of a creditor is known, actual written notice is required." Bosinger v. United States Airways, Inc., 510 F.3d at 451 (internal quotation marks omitted)(citing City of New York v. New York, New Haven & Hartford R.R. Co., 344 U.S. 293, 296 (1953)). See also Tulsa Prof'l Collection Servs., Inc. v. Pope, 485 U.S. 478, 489-90 (1988).  A creditor's identity is "reasonably ascertainable" if that creditor can be identified through "reasonably diligent efforts." Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798 n. 4 (1983). Reasonable diligence does not require "impracticable and extended searches . . . in the name of due process." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. at 317. A debtor does not have a "duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it." In re Charter Co., 125 B.R. 650, 654 (M.D.Fla.1991).

## ANALYSIS

The Court will not dismiss the Complaint at this time.  While the Confirmation Order would otherwise discharge and enjoin Selman's claims, there is a factual dispute whether Selman was a known or unknown creditor at the time of the Bankruptcy.  Accordingly, the Court will allow the case to proceed so that this factual issue can be resolved after some discovery takes place.

I.      **THE COURT MAY TAKE JUDICIAL NOTICE OF THE CONFIRMATION ORDER AND ANY OTHER PUBLICLY FILED BANKRUPTCY DOCUMENTS.**

Because the Confirmation Order is a public document in the Debtors' bankruptcy proceeding, the Court may take judicial notice of this order and any other publicly filed bankruptcy documents. See Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000) abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001).  DGS referred to and relied upon the bankruptcy court proceedings in its affirmative defenses, and premised its rule 12(c) on those same proceedings.  See Amended Answer at 8; Judgment on the Pleadings.  Consequently, the Court will take judicial notice of DGS' bankruptcy proceedings and, in particular, the resulting Confirmation Order and Reorganization Plan.

Selman has not attempted to persuade the Court that it should not consider these documents. There is no sound reason for the Court not to take judicial notice of the documents in the bankruptcy file.  Accordingly, the Court will, in deciding this rule 12(c) motion, consider the bankruptcy documents.

II.     **THE COURT WILL NOT CONSIDER EVIDENCE OUTSIDE THE PLEADINGS TO DECIDE THE 12(c) MOTION.**

The same standards that govern a motion to dismiss under rule 12(b)(6) also govern a motion for judgment on the pleadings under rule 12(c).  See Atl. Richfield Co. v. Farm Credit Bank, 226 F.3d at 1160. A court must convert a motion to dismiss into a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court," and if "all parties . . . [are] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(d).  In his Response, Selman relies heavily on what is purportedly his affidavit.  See Selman Affidavit (undated), filed May 5, 2008 (Doc. 25)("Selman Aff.").

Additionally, Selman attached exhibits to his Response. <u>See</u> Response, Exhibits 1-3.  Selman also

filed a supplement to his Response and attached several exhibits.  <u>See</u> Supplement to Plaintiff's

Response to Defendant's Motion for Judgment on the Pleadings, Exhibits 1-6, filed July 24, 2008

(Doc. 36)("Supplemental Response").

 For the purposes of this motion, however, the Court will not rely -- in making its decision --

on any evidence presented to the Court outside of the pleadings.  Thus, the Court will exclude all

matters presented outside of the pleadings in its decision on this motion.  To provide further

guidance to the parties, however, the Court will not preclude mere discussion of these matters in this

Memorandum Opinion and Order.

**III. THE COURT WILL NOT DISMISS SELMAN'S CLAIMS AGAINST DGS ON THE PLEADINGS BECAUSE THE PLEADINGS PRESENT A MATERIAL FACTUAL ISSUE.**

 A rule 12(c) motion is designed to provide a means of disposing of cases when the material

facts are not in dispute between the parties.  <u>See</u> <u>Kruzitis v. Okuma Mach. Tool, Inc.</u>, 40 F.3d at 54

("Under Rule 12(c), we will not grant judgment on the pleadings unless the movant clearly

establishes that no material issue of fact remains to be resolved and that he is entitled to judgment

as a matter of law.")(internal quotation marks omitted).   A "[j]udgment on the pleadings should not

be granted 'unless the moving party has clearly established that no material issue of fact remains to

be resolved and the party is entitled to judgment as a matter of law.'"  <u>Park Univ. Enterprises, Inc.</u>

<u>v. Am. Cas. Co. of Reading, Pa.</u>, 442 F.3d at 1244 (citing <u>United States v. Any & All Radio Station</u>

<u>Transmission Equip.</u>, 207 F.3d 458, 462 (8th Cir. 2000)).

 "Any party may move for judgment on the pleadings if no material facts are in dispute and

the dispute can be resolved on both the pleadings and any facts of which the Court can take judicial

notice." Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. at 304 (citing Fed. R. Civ. P. 12(c)). A motion

for a judgment on the pleadings will be granted if the pleadings demonstrate that the moving party

is entitled to judgment as a matter of law. See Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. at 304.

The Court believes that the pleadings alone -- without reference to any evidence beyond the

pleadings -- present issues of fact that are in dispute and that remain to be resolved.  DGS' motion

asks the Court to dismiss Selman's claims because the discharge of debtors and the permanent

injunction provisions of the reorganization plan bar his claims.  See Judgment on the Pleadings  at

6-8.  The pleadings do not, however, present the Court with aligning material facts that would allow

the Court to determine that the moving party is entitled to a judgment as a matter of law.

Specifically, the pleadings do not show that the material facts surrounding this defense are

not in dispute.  For DGS' defense to warrant a judgment on the pleadings in DGS' favor, the Court

would need to know that the material facts regarding this issue, such as the status of the creditor and

the notice received by the debtor, are not disputed. The pleadings do not demonstrate that the status

of the creditor and/or the notice is undisputed or clear from the record, and thus that DGS is entitled

to a judgment as a matter of law.

Furthermore, going beyond the pleadings, the entire record demonstrates that, the motion for

judgment on the pleadings, coupled with Selman's response to that motion, confirm that there is a

dispute on the material fact of whether Selman was a known or unknown creditor.[4]  For the Court

---

[4] The circumstances of this case show the problems of using a motion for judgment on the pleadings.  Selman pled his tort claims, apparently not anticipating the bankruptcy defense that DGS raised in its answer.  Selman thus did nothing to plead around the defense.  Accordingly, it would be somewhat unfair to dismiss his case on a defense raised in the pleadings only in the answer.  It is understandable why Selman points to evidence outside of the pleadings in his response to DGS' motion and also why the Court must be vigilant to construe the pleadings strictly in his favor to prevent surprise, prejudice, and overly technical reliance upon notice pleadings at this stage of the

to determine that Selman's claim was or was not discharged through the Bankruptcy proceeding, the Court must know additional facts which are apparently in dispute.  Specifically, the Court must know whether Selman was a known or unknown creditor.

Whether Selman was a known or unknown creditor effects the notice to which he was entitled to receive, which in turn effects whether he received adequate notice, under the circumstances.  Whether he received adequate notice effects whether he is able to bring his claims in this Court.  As has become evident from DGS' motion for judgment on the pleadings and Selman's response, there is a dispute whether Selman was a known or unknown creditor.

The pleadings do not resolve this dispute.  Thus, it is in dispute whether Selman was a known or unknown creditor, and thus whether he received adequate notice of the bankruptcy proceeding. Therefore, because the pleadings raise issues of material fact, the Court cannot say that DGS has demonstrated, on the pleadings, that DGS is entitled to judgment as a matter of law.  Thus, the Court will deny the motion for Judgment on the Pleadings.

DGS argues that Selman cannot be a known creditor because, despite the speculations of Selman's attorney, he has not provided any evidence to establish that Selman was a known creditor. But the Court's decision does not turn on evidence beyond the face of the pleadings. Whether Selman's attorney has provided evidence, beyond the pleadings, regarding his status as a creditor, is irrelevant to the Court's decision on the motion for judgment on the pleadings.  As the Court has stated, to make its decision it is only considering the pleadings.  In looking at the pleadings, the Court must "accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same."  Park Univ. Enterprises, Inc. v. Am. Cas. Co.

case.

of Reading, Pa., 442 F.3d at 1244.  The court must view the facts presented in the pleadings, and draw the inferences therefrom, in the light most favorable to the nonmoving party.  See Ramirez v. Wal-Mart Stores, Inc., 192 F.R.D. at 304.  All of the nonmoving parties' allegations are deemed to be true, and all of the movants' contrary assertions are taken to be false.  See Nat'l Metro. Bank v. United States, 323 U.S. at 456-57; Ramirez v. Dep't of Corr., 222 F.3d at 1240; Freeman v. Dep't of Corr., 949 F.2d at 361.  In this fashion, the courts hope to ensure that the nonmoving party's procedural and substantive rights are decided as fully and fairly on a rule 12(c) motion as they would have been if there had been a trial on the merits.  See C. Wright & A. Miller, Federal Practice and Procedure: Civil 3d § 1368 (Judgment on the Pleadings)(citing Roemhild v. Jones, 239 F.2d 492).  A district court may grant a motion for judgment on the pleadings only if all material issues can be resolved on the pleadings.  See Hill v. Cray Research, Inc., 864 F.Supp. at 1078.

Thus, in applying the proper standard in deciding the motion for judgment on the pleadings the Court must take all of the non-moving party's allegations as true and draw all reasonable inferences in favor of the non-moving party.  In so doing, the Court must assume that Selman was a known creditor and that he has evidence to prove that his claims were not merely conjectural but rather entitled him to the same notice that was received by the other known creditors.  Furthermore, during the July 24, 2008 hearing, DGS stated that the known creditors received notice beyond that which the unknown creditors received.[5]  Thus, according to Tenth Circuit law, if Selman was a

---

[5]

| COURT: | So the known [creditors] received a different notice than the unknown [creditors]? |
|---|---|
| WEXLER: | Yes[,] just . . . a one-page letter and there was also a publication notice. |

known creditor, as he alleges, "[he] acted reasonably when [he] expected the same formal notice of the confirmation hearing which was sent to other identifiable creditors." <u>Reliable Elec. Co., Inc. v. Olson Constr. Co.</u>, 726 F.2d at 622.

DGS also argues that, because Selman failed to protect any interest he had in his claims by failing to file an Administrative Claim by the May 30, 2007 deadline, he should not be able to proceed with those claims in this Court but rather should be required to obtain leave to file a late Administrative Claim from the Bankruptcy Judge in the Southern District of New York. This argument appears to assume that Selman was an unknown creditor. Moreover, at this time, the issue before the Court is whether it should grant DGS' motion for judgment on the pleadings. Whether Selman was a known or unknown creditor remains to be answered. Until more concrete facts are provided to the Court regarding Selman's status as a known or unknown creditor, the Court cannot determine whether Selman is able to bring his claims in this Court or in any other court. Thus, the Court will not, at this time, require Selman to obtain leave to file a late Administrative Claim with the Bankruptcy Court in the Southern District of New York.[6]

_____

Transcript of Hearing at 48:6-9 (taken July 24, 2008)("Tr.2")(Court & Wexler).

[6] At the June 2, 2008 hearing, the Court asked how mechanically the Court would get this case or issue before the Bankruptcy Court in New York and the legal basis for doing so. See Tr. at 18:10-14 (Stephenson & Court). DGS' counsel stated it did not know, but would research that issue for the Court. See id. at 23-25 (Stephenson). While DGS supplied a supplemental letter after the hearing, and renewed its request that the Court require Selman to first go to the Bankruptcy Court, DGS did not provide further information specifically directing how that is done under the circumstances of this case, nor did it provide the basis for doing so when it is unknown or not established whether Selman was a known or unknown creditor.

A.   **IF SELMAN RECEIVED ADEQUATE NOTICE, HIS CLAMS WERE DISCHARGED UNDER THE REORGANIZATION PLAN AND CONFIRMATION ORDER.**

It is undisputed that Selman's claims arose pre-confirmation date.  With adequate notice to Selman, his claims were discharged through the Confirmation Order.  Paragraph 78 of the Confirmation Order states, in pertinent part: "[U]pon the Effective Date [April 30, 2007], all existing Claims against the Debtors and Interests in the Debtors shall be . . . discharged and terminated." Confirmation Order at 38.  Furthermore, under the Confirmation Order, all Claims against DGS were satisfied, discharged, and released in full as of the "Effective Date," April 30, 2007. Confirmation Order ¶ 78, at 38.  Selman's Complaint constitutes a "Claim" for purposes of the Reorganization Plan, because, as a successful party to any or all of his asserted claims, he will seek to recover payment in the form of damages.  Complaint ¶ 35, at 4.  This form of payment meets the test set forth in the Reorganization Plan, as specified in § 101(5) of the Bankruptcy Code. Specifically, a claim exists where there is "right to payment." 11 U.S.C. § 101(5).

There is no dispute that the alleged events took place before the Effective Date -- April 30, 2007 -- by several months.  Furthermore, the Court notes that Selman does not appear to dispute that the Confirmation Order discharges all pre-confirmation date claims.  See Response at 3-4.  Rather, Selman argues that (i) his claim is not discharged because he received no notice of the bankruptcy proceeding; (ii) Delta knew of his claim before its discharge in bankruptcy; (iii) the intentional misconduct of Delta precludes the discharge of Selman's claim.  See Response at 3-4. Accordingly, if there was adequate notice, Selman's claims arose pre-Effective Date, and they have been discharged in DGS' bankruptcy proceedings.

Furthermore, Selman contends that DGS had the obligation to bring Selman's claims into

-34-

the bankruptcy proceeding but failed to do so.  See Response at 3.  Selman notes that 11 U.S.C. §

523(a)(3) does not permit the discharge of any debt not listed or scheduled under § 521(1) with the

creditors name if known to the debtor, in time to permit the timely filing of a proof of claim.  See

Response at 3.  Additionally, Selman alleges that he did not receive any notice of the bankruptcy

proceeding.  See Response at 3.  DGS contends that it was not aware of Selman's claims before its

bankruptcy discharge, thus making Selman an unknown creditor.  See Reply at 5-6.  DGS notes that

it provided Selman notice in multiple forms (i) Selman's weekly pay checks were stamped with

"Debtor-in-Possession"; and (ii) all of the filings and notices were made available to the public

through www.deltadocket.com.  Reply at 2-3. In his supplement to his Response to the Motion for

Judgment on the Pleadings, Selman provided the Court with evidence that shows that DGS knew

about his claims before its bankruptcy discharge.  See  Supplemental Response, Exhibits 1-6.  In

response to Selman's supplemental Response, DGS stated at the July 24, 2008 hearing that such

evidence was not sufficient to show that Selman was a known creditor.  See Tr.2 at 53:9-13

(Stephenson)("[The additional evidence presented by Selman] does nothing to convert [Selman] to

anything other than an unknown creditor . . . where there is a claim, although conceivable and where

its speculative and conjectural just like it was with Mr. Selman, that is not enough to make Mr.

Selman a known creditor.")

       While the Court did not consider any matters outside of  the pleadings to decide the 12(c)

motion, and need not determine anything beyond the fact that the pleadings present a dispute on the

material fact of whether Selman was a known or unknown creditor, the Court notes that this

distinction appears key to the future of this case because if Selman was a known creditor it appears

that, "[he] acted reasonably when [he] expected the same formal notice of the confirmation hearing

which was sent to other identifiable creditors." <u>Reliable Elec. Co., Inc. v. Olson Constr. Co.</u>, 726 F.2d at 622.  As the parties have indicated, and as the case law appears to suggest, the notice required for known and unknown creditors is different.  Thus, whether DGS knew of Selman's claims before the discharge could effect whether the notice he received was adequate to allow his claims to be discharged.

### B.   IF SELMAN RECEIVED ADEQUATE NOTICE, HE IS ENJOINED FROM BRINGING THIS SUIT.

Assuming that Selman received adequate notice, Selman is permanently enjoined from commencing or continuing any action or proceeding against the Reorganized Debtors, including DGS, with respect to claims arising pre-confirmation date.  In addition to discharging Selman's Claims, the Confirmation Order provides that all persons holding a discharged or released claim against DGS are "permanently enjoined from . . . (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim . . . or Interest against the Debtors or Reorganized Debtors . . . other than to enforce any right to a distribution pursuant to the Plan."  Confirmation Order ¶ 80, at 39.  As was the case for the plaintiff in <u>Garland v. US Airways, Inc.</u>, No. 05-140, 2007 WL 921980 at *6-7 (W.D. Pa. March 14,  2007), if Selman received adequate notice, he is permanently enjoined from commencing or continuing any lawsuit or other proceeding against the debtor or reorganized debtor relating to a pre-confirmation date claim.  <u>See</u> Confirmation Order ¶ 80, at 39.

For this reason, the Court would enjoin Selman from continuing his lawsuit against DGS, because his claims arose pre-Effective Date and therefore are subject to the permanent injunction contained in the Reorganization Plan and Confirmation Order.  <u>See</u>, <u>e.g.</u>, <u>Garland v. U.S. Airways, Inc.</u>, 2007 WL 921980 at *6-7 (stating that, through the defendant's plan and confirmation order,

the plaintiff was enjoined from commencing or continuing his pre-confirmation date claims against U.S. Airways).  Because the Court cannot, however, determine whether Selman received adequate notice, the Court will not enjoin Selman at this time.

### C.   DGS' ALLEGED INTENTIONAL MISCONDUCT DOES NOT PRECLUDE THE DISCHARGE OF SELMAN'S CLAIM.

Selman also argues that § 523(a)(6) does not permit the discharge of a debt for willful or malicious injury to another or to the property of another, and that the assault on Selman was intentional and that the termination was intentional and in reprisal for the criminal charges filed against his supervisor.  See Response at 4.  DGS disputes that Selman has alleged a claim for willful or malicious injury.  See Reply at 6.  The Court will assume, as it must for purposes of this motion, that the assault on Selman was intentional.  The Court will also assume that the termination was also intentional and in reprisal for the criminal charges that Selman filed against his supervisor.

The willful-and-malicious-injury exception in § 523(a)(6) upon which Selman relies, however, does not apply to corporate debtors.  See 11 U.S.C. § 1141(d)(2) (stating "[a] discharge under this chapter does not discharge a debtor who is an individual from any debt excepted from discharge under section 523 of this title."). The Supreme Court has stated: "[I]t should be generally assumed that Congress expresses its purposes through the ordinary meaning of the words it uses, . . . [and] absent a clearly expressed legislative intention to the contrary, statutory language must ordinarily be regarded as conclusive." Escondido Mutual Water Co. v. La Jolla Band of Mission Indians, 466 U.S. at 772 (citation and internal quotations omitted). 11 U.S.C. § 109(a) authorizes a "person" to be a debtor in bankruptcy, and 11 U.S.C. § 101(41) defines a "person" to include an "individual, partnership, and corporation." 11 U.S.C. § 101(41)  "Although 'individual' is not specifically defined under the code, it is apparent from the separate enumeration of individual and

corporation in § 101(41) that those entities were intended to be treated separately under the code." In re Automatic Plating of Bridgeport, Inc., 202 B.R. at 542 (citing Yamaha Motor Corp. v. Shadco, Inc., 762 F.2d at 670 ("Congress clearly did not intend the term corporate debtor to be used interchangeably with the term individual debtor, as such a construction would render meaningless employment by Congress of the term individual"))(internal citations and quotations omitted). See e.g., In re Pelkowski, 990 F.2d at 742 ("We believe it is evident that 'individual' debtor is used in contradistinction to 'corporate' debtor."); Garrie v. James L. Gray, Inc., 912 F.2d 808, 812 (5th Cir. 1990)("[T]he 'willful and malicious injury' exception to discharge, like all of the exceptions to discharge found in section 523(a), applies only to individual, not corporate, debtors.").

Furthermore, the Court notes that both parties conceded that the 11 U.S.C. § 523(a)(6) exception does not apply to corporate debtors. See Reply at 6; Tr. at 14:4-7 (Court & Garcia). Because the case law indicates that the 11 U.S.C. § 523(a)(6) exception does not apply to corporate debtors and because the parties concede that it does not apply to corporate debtors such as DGS, the Court finds that the 11 U.S.C. § 523(a)(6) exception is inapplicable to this case.

## IV.   THE COURT NEED NOT DECIDE THE MERITS OF SELMAN'S CLAIMS ON THIS MOTION.

DGS contends that it indisputably employed Selman "at will" and that he will not be able to overcome this presumption of "at will" employment. Reply at 6, n.8. DGS also contends that Selman's claims for breach of contract, wrongful discharge, and breach of covenant of good faith and fair dealing are frivolous. See id. DGS further contends that Selman's final claim for "complaint for damages for assault," which is allegedly based entirely on a statement that a former DGS employee allegedly made to him, is equally frivolous, in part, because the statement resulted in no injury to Selman. Id. DGS maintains that Selman sustained no injury as a result of the alleged

comments by Janke, a former DGS station manager. <u>See</u> <u>id.</u> at 6, n.9.  DGS also argues that, had Selman been injured, he would have had an on-the-job injury and his recourse would have been worker's compensation.  <u>See</u> <u>id.</u>

These issues, however, are not the subject of DGS' motion.  DGS raised most of these issues in its Reply.  In any case, the Court will not attempt to resolve these issues on a rule 12(c) motion.

In conclusion, the Court will not bar Selman's claims on the pleadings.  Because there are material issues of fact which can not be decided on the pleadings, the Court will deny the Motion for Judgment on the Pleadings.

**IT IS ORDERED** that Defendant DAL Global Services, LLC's Motion for Judgment on the Pleadings is denied.


_____
UNITED STATES DISTRICT JUDGE




*Counsel:*

Narcisco Garcia, Jr.
Garcia Law Office
Albuquerque, New Mexico

    *Attorney for the Plaintiff*

Larry Wexler
Chief Counsel for DAL Global Services
Atlanta, Georgia

    -- and --

Barbara G. Stephenson
Justin E. Poore
Gilkey & Stephenson, P.A.
Albuquerque, New Mexico

      *Attorneys for Defendant Delta Airlines
       and DAL Global Services, LLC*